UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 26-mj-71 (MJD/JFD)

UNITED STATES OF AMERICA,

Plaintiff,

v.

WILLIAM VERMIE,

Defendant.

**GOVERNMENT'S RESPONSE TO
DEFENDANT'S MOTION TO
DISMISS FOR OUTRAGEOUS
GOVERNMENT CONDUCT**

The United States of America, by and through its attorneys, Daniel N. Rosen, United States Attorney for the District of Minnesota, and Zain Abid, Special Assistant United States Attorney, hereby submits its response in opposition to Defendant's Motion to Dismiss for Outrageous Government conduct (ECF No. 26). The Government opposes this motion for the reasons set forth below.

Mr. Vermie moves to dismiss the information, alleging the Government engaged in outrageous conduct in violation of the Fifth Amendment's Due Process Clause (ECF. No. 26). The Government denies this allegation. The Government's challenged conduct in this case is not outrageous. Even following the Defendant's recitation of the facts, the Government's conduct in this case falls far below the extremely high standard required for dismissal for outrageous conduct.

Dismissal of a criminal case based on alleged outrageous government conduct is an extraordinary remedy that applies only in the rarest of circumstances. *See United States v. Combs,* 827 F.3d 790, 794 (8th Cir. 2016) (citing *United States v. Russell,* 411 U.S. 423, 432 (1973) and *United States v. King,* 351 F.3d 859, 867 (8th Cir. 2003)). The Eighth Circuit has emphasized that this doctrine is "reserved for conduct that falls within the narrow band of the most intolerable government conduct." *King,* 351 F.3d at 867. Dismissal is appropriate only where law enforcement conduct violates "that fundamental fairness, shocking to the universal sense of justice, mandated by the Due Process Clause." *Combs,* 827 F.3d at 794 (citing *Russell,* 411 U.S. at 432).

This is a highly demanding standard. The Eighth Circuit has explained that although the doctrine exists, the level of misconduct required to justify dismissal is "quite high," and the government's conduct must truly "shock the conscience of the court." *King,* 351 F.3d at 867; see also *Combs,* 827 F.3d at 795 ("We are aware of only two reported court of appeals decisions—both from the 1970s—that have deemed the government's conduct so outrageous as to violate due process."); *United States v. Bugh,* 701 F.3d 888, 894 (8th Cir. 2012) (noting that dismissal is warranted only when government conduct falls within the "*narrow* band of the *most intolerable* government conduct") (emphasis added).

The outrageous conduct doctrine focuses on the nature of the government's investigative conduct.  *United States v. Hunt,* 171 F.3d 1192, 1195 (8th Cir. 1999).  The Eighth Circuit has rejected attempts to characterize standard investigative techniques as outrageous government conduct, recognizing that aggressive investigative tactics do not become unconstitutional merely because they provide an opportunity to commit a crime.  *See Bugh,* 701 F.3d at 894 (finding that use of confidential informants is a permissible law enforcement technique); *Combs,* 827 F.3d at 795 (concluding that infiltration of criminal enterprises and participation in planned criminal activity are recognized investigative methods that generally do not violate due process).

Because dismissal is such a drastic remedy, the defendant bears a heavy burden.  *King,* 351 F.3d at 867.  The doctrine applies only to the most egregious and intolerable forms of government misconduct, not to routine investigative decisions or tactical judgments made during criminal investigations.  The government's conduct must be more than aggressive, persistent, or even questionable, it must be conduct that violates fundamental fairness and shocks the conscience before dismissal is warranted.  *Bugh,* 701 F.3d at 894; King, 351 F.3d at 867; *Combs,* 827 F.3d at 795.

Courts find government conduct sufficiently outrageous only in extremely rare instances. *Combs,* 827 F.3d at 795. It is not enough for the

government to create the conditions necessary for a crime to occur. For the government's role in an offense to shock the conscience, the government must reach a demonstrable level of outrageousness. *Id.* (citing *United States v Twigg,* 588 F.2d 373, 380 (3d Cir. 1978)). In *Combs,* an ATF agent presented a target of opportunity, hired the crew to commit the robbery and produced a getaway car for use in commission of the robbery. *Combs,* 827 F.3d at 793-795. The court in *Combs* cited *Greene v. United States,* saying that government conduct may shock the conscious when it involves "itself so directly and continuously *over such a long period of time* in the creation and maintenance of criminal operations, and yet [seeks to] prosecute its collaborators". (emphasis added) *Id.* (citing *Greene v United States,* 454 F.2d 783, 787 (9th Cir. 1971)).

However, the court reasoned that even in this situation where an agent participates in the planning of a crime, and provides resources for the crime, it does not exceed the level of permissible law enforcement tradition. *Combs*, 827 F.3d at 795. Accordingly, the court found that the ATF's operation was not so shocking to the universal sense of justice that they violated the fundamental fairness required by the Due Process Clause. *Id.* at 795, 796.

Furthermore, as seen in *Hunt*, even when the government supplies material support which is essential to the commission of a crime, courts still routinely decline to find outrageous government conduct. *See Hunt*, 171 F.3d

4

1192 at 1195.  In *Hunt*, the government provided 2,088 grams of ephedrine, a chemical necessary to produce methamphetamine, as a part of an undercover operation to prosecute the defendant for the production of methamphetamine. *Id.*  The court reasoned that law enforcement may go "a long way in concert with the individual in question without being deemed to have acted so outrageously as to violate due process".  *Id.*  citing *United States v Kummer,* 15 F.3d 1455, 1460 (8th Cir. 1994).  Accordingly, the court ruled that the government's conduct was not sufficiently outrageous to shock the conscience. *Id.*

These cases illustrate that government conduct must be truly shocking to violate a defendant's Due Process rights. It is not enough that the government plays a role in the commission of an offense or even creates the conditions necessary to commit it. The court finds that the government manufactures an offense when it engages in direct and continuous involvement in the criminal enterprise, not simply standard investigative procedures or simply aggressive, persistent, or questionable behavior.

In this case, Mr. Vermie fails to raise specific facts that rise to a prima facie outrageous government conduct claim.  On January 13, 2026, Enforcement Removal Operations (ERO) agents were conducting law enforcement operations in Minneapolis, Minnesota.  While an agent was escorting the target individual to the law enforcement vehicle for transport, a

large crowd of approximately 30 protestors gathered.  As a result, a group of agents formed a security perimeter to create space between the protestors and the agent escorting the target individual.  At this time, an agent maintaining the security perimeter observed an individual (later identified as William Vermie) from approximately three to five car lengths away from him.  According to the agent, Mr. Vermie ran through the crowd, pushing others to get toward the agent.  The agent identified himself as a law enforcement officer and told Mr. Vermie to "get back."  The agent extended his arms outward to create distance between the security perimeter and Mr. Vermie.  During this series of events, the agent pushed Mr. Vermie back.  Additionally, Mr. Vermie twice swatted the agent's hand.  The agent brought Mr. Vermie to the ground.  Multiple agents were required to successfully arrest Mr. Vermie as Mr. Vermie heavily resisted law agents' efforts to arrest him.  Even if the Government concedes the movant's recitation of the facts for the purposes of this motion, Mr. Vermie has not established a basis to show specific facts amounting to outrageous government conduct.  Here, the ERO agent's conduct falls far short of the type of extreme, conscience-shocking behavior required to justify dismissal under the outrageous government conduct doctrine.  Government agents were at this scene conducting federal law enforcement operations.  The agents created a standard security perimeter for law enforcement and crowd safety.   No one disputes that Mr. Vermie voluntarily and intentionally

6

aggressively ran up to the security perimeter to breach the line agents established. After multiple commands to move back, the victim agent pushed Mr. Vermie back behind the security perimeter. After Mr. Vermie swatted the agent's hand, the agent took Mr. Vermie to the ground. Mr. Vermie aggressively resisted as multiple agents attempted to arrest him. Agents spent less than 40 minutes on the scene. The Government alleges Mr. Vermie violated 18 U.S.C. § 111(a)(1) (assaulting, resisting, or impeding certain officers or employees).

This case simply does not contain the rare "conscience shocking" government conduct the Eighth Circuit has found intolerable. While agents may have engaged in minimally aggressive or forceful tactics to secure the perimeter, this does not rise to outrageous government conduct. Here, the government played no role in any criminal enterprise nor did it have any direct or continuous involvement in Mr. Vermie's alleged crime. Dismissal of case based on alleged outrageous government conduct is an extraordinary remedy that applies only in the rarest of circumstances. This is not one of those extremely rare cases. As such, the Court should deny Mr. Vermie's motion.

## CONCLUSION.

Based on the foregoing, the United States respectfully requests that the Court deny Mr. Vermie's Motion.

8

Dated: March 27, 2026

Respectfully Submitted,

DANIEL N. ROSEN
United States Attorney

*s/Zain Abid*

BY: Zain Abid
Special Assistant U.S. Attorney